IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BENJAMIN STANLEY,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a Blue Cross and Blue Shield of Montana and John Doe Defendants 1-50,<br><br>Defendants. | CV 26-65-BU-KSL<br><br>MEMORANDUM OPINION AND ORDER |

Before the Court is Plaintiff Benjamin Stanley's Motion to Remand. (Doc. 17). Stanley argues that this Court lacks subject matter jurisdiction under 28 U.S.C. §1332 because the amount in controversy does not exceed $75,000. (*Id.* at 1). Defendant Health Care Service Corporation, doing business as Blue Cross and Blue Shield of Montana, filed a response opposing the motion. (Doc. 25). Stanley filed a reply. (Doc. 28). Because Blue Cross and Blue Shield of Montana has failed to show by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court remands the matter to the Montana Eighteenth Judicial District Court.

## I. Background

On May 20, 2026, Stanley filed a complaint in state court against Blue Cross and Blue Shield of Montana. (Doc. 5). The complaint alleges that Blue Cross and Blue Shield of Montana improperly denied coverage for medical treatment Stanley received out of state. (*See id.* ¶¶22, 33-27).[1] The complaint alleges four counts: breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Montana's Unfair Trade Practices Act, and declaratory judgment. (*Id.* ¶¶30-53). Stanley alleges that he incurred $63,687.68 in medical expenses. (*Id.* ¶13). This amount includes $58,634.68 that Blue Cross and Blue Shield of Montana allegedly denied in claims because no out-of-state waiver was on file, and $4,540.67 that Blue Cross and Blue Shield of Montana allegedly "processed inaccurately, and allowed the services when they should not have been allowed." (*Id.* ¶¶13, 17).[2] In Stanley's prayer for relief, he requests a declaratory judgment in his favor; past, present, and future medical expenses he incurred; compensatory damages; costs incurred; interest; attorneys' fees; and any other relief this Court shall deem just and proper. (Doc. 5 at 9-10).

[1] The Complaint restarts its paragraph numbering at ¶27 after ¶37. Citations in this memorandum opinion follow that numbering.

[2] The Complaint's stated total of $63,687.68 (Doc. 5 ¶13) reflects the sum of $58,634.68 in denied claims and $5,053.00 in billed charges for the claims Blue Cross and Blue Shield of Montana says it processed inaccurately. (Doc. 5, Ex. 3; Doc. 28-1). The Complaint, however, identifies $4,540.67—rather than $5,053.00—as the relevant amount in claims that Blue Cross and Blue Shield of Montana says it processed inaccurately. This distinction does not affect the Court's analysis because the parties agree on the relevance of the $58,634.68 figure.

Blue Cross and Blue Shield of Montana filed a notice of removal on July 2, 2026 (Doc. 1) followed by a Motion to Dismiss in this Court on July 20, 2026. (Doc. 10). Before considering the merits of the Motion to Dismiss, this Court must first determine whether it has jurisdiction over this case under 28 U.S.C. §1332.

## II. Standard of Review

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]" 28 U.S.C. §1441(a). Federal courts have original jurisdiction where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §1332. A removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant").

The amount in controversy is the amount "at stake in the underlying litigation." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). The amount in controversy includes the full relief claimed at the time of removal, not merely the amount a plaintiff will ultimately recover. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). When additional monetary relief would require the defendant to pay, that relief counts, regardless of whether the plaintiff specifies

the amount. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007). The amount in controversy requirement excludes interest and costs. 28 U.S.C. §1332. Where a plaintiff can recover attorneys' fees under applicable law, future recoverable fees are included in the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794-96 (9th Cir. 2018). Courts consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 795.

When the plaintiff contests removal, the parties can submit proof and the court determines by a preponderance of the evidence whether the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197-99 (9th Cir. 2015); 28 U.S.C. §1446(c)(2)(B). Courts can consider the complaint, the removal papers, and any "summary-judgment-type evidence relevant to the amount in controversy at the time of removal. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). "Conclusory allegations as to the amount in controversy are insufficient." *Id.* at 1090-91.

The court can make reasonable assumptions when they have a basis in the record. *Ibarra*, 775 F.3d at 1199. A removing defendant, however, "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. A party cannot "pull[] [assumptions] from thin air." *Id.* at 1199.

If there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve those doubts in favor of remanding the action to state court. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). Indeed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c).

**III. Analysis**

For a federal court to have diversity jurisdiction, there must be complete diversity of citizenship between the parties and the amount in controversy must exceed $75,000. 28 U.S.C. §1332. The parties do not dispute that they are diverse for purposes of subject matter jurisdiction. (Doc. 25 at 4). The issue is whether the amount in controversy exceeds $75,000.

As an initial matter, the parties dispute the numerical value of denied coverage that Stanley seeks. Stanley applies a calculation in arguing that the floor of the amount Blue Cross and Blue Shield of Montana would owe if it were found liable totals $959.18. (Doc. 28 at 4). Blue Cross and Blue Shield of Montana counters that the Complaint states a numerical value of $58,634.68 in denied coverage and so treats that number as the floor of the amount in controversy. (*See* Doc. 25 at 11-12). The Court need not resolve whether Stanley's competing calculation of $959.18 more accurately reflects Blue Cross and Blue Shield of Montana's potential

exposure, because the analysis below demonstrates that Blue Cross and Blue Shield of Montana cannot meet its burden even under the higher, more favorable-to-Defendant figure it advances. For this Court to have jurisdiction over this case, Blue Cross and Blue Shield of Montana must establish by a preponderance of the evidence that more than $16,365.32 will be accounted for in compensatory damages, attorneys' fees, and other such relief.

Blue Cross and Blue Shield of Montana relies on two categories of damages alleged in the Complaint to satisfy this jurisdictional threshold. First, Blue Cross and Blue Shield of Montana asserts that the amount in "unliquidated damages"—the "emotional-distress damages, future medical expenses, past and future special and general damages, and actual damages claimed under the [Montana Unfair Trade Practices Act]"—exceeds $16,365.32. (Doc. 25 at 6 n.2). Second, Blue Cross and Blue Shield of Montana argues that Stanley's claim for attorneys' fees exceeds $16,365.32. (*Id.* at 12). But in relying on these two categories of damages, Blue Cross and Blue Shield of Montana fails to meet its evidentiary burden. This Court lacks jurisdiction and remands this case to state court.

**1. Blue Cross and Blue Shield of Montana Fails to Show that the Damages Stanley Seeks Place the Amount-in-Controversy Over $75,000.**

The different categories of damages Stanley alleges in his complaint do not establish that the amount in controversy exceeds the jurisdictional threshold. Stanley's complaint explicitly seeks $58,634.68 in denied medical claims as damages.

(Doc. 5 ¶13). But Stanley also seeks damages for financial loss, past and future mental and emotional distress, as well as past and future special and general damages. (*Id.* ¶28). Blue Cross and Blue Shield of Montana notes that Montana law allows for emotional distress damages distinct from contract benefits in insurance bad-faith and Unfair Trade Practices Act cases. (Doc. 25 at 8). But this proposition does not support the notion that Stanley has placed more than $16,365.32—the difference between the stated amount of $58,634.68 and jurisdictional threshold of $75,000—of emotional damages at stake in this case.

Extra-contractual awards in similar cases are relevant to determining the amount in controversy, but such awards are not dispositive. Blue Cross and Blue Shield of Montana cites three cases where insurance verdicts for relief on extra-contractual matters such as emotional distress and future medical expenses were far greater than the $16,365.32 gap here. (Doc. 25 at 10); *Weber v. Blue Cross of Montana*, 643 P.2d 198 (Mont. 1982); *Hull ex rel. Senne v. Ability Ins. Co.*, No. CV-10-116-BLG-RFC, 2012 WL 6083614 (D. Mont. Dec. 6, 2012); *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241 (9th Cir. 1998). Blue Cross and Blue Shield of Montana suggests that these cases show that extra-contractual damages "routinely" exceed $16,365.33. (Doc. 25 at 9-10). But extra-contractual awards in other cases do not alone establish a basis for assuming such damages will similarly exceed $16,365.32 in this case. While Blue Cross and Blue Shield of Montana asserts that each of these cited cases

is "similar," it only argues that—like this case—those cases each requested future medical expenses and damages for emotional distress. But Blue Cross and Blue Shield of Montana fails to explain why those cases are probative of Stanley's potential recovery here.

And while *Kroske v. U.S. Bank Corporation* confirms that this Court can look to other cases to support unspecified damages claims for purposes of establishing the amount in controversy, the defendant in *Kroske* provided more evidence than this Court has before it. 432 F.3d 976, 980 (9th Cir. 2005). There, the defendant presented the plaintiff's own interrogatory answers and identified the estimated amounts for each category of damages based on ascertainable figures relevant to her age-discrimination claim like her salary, her 401(k) contributions, and her lost wages as a result of not finding substitute employment. Order Determining Amount in Controversy Met for Jurisdictional Purposes at 2, *Kroske v. U.S. Bancorp*, No. CS-2-439-RHW (E.D. Wash. Jan. 29, 2004). In addition, the court evaluated a list provided by the defendant of emotional distress damages awarded in age-discrimination cases in Washington. *Id.* at 3. The comparable awards from other cases supplemented plaintiff-specific evidence in *Kroske*, but they did not replace plaintiff-specific evidence. On the basis of the plaintiff-specific evidence, the district court was able to estimate a dollar value for Kroske's lost wages and 401(k) contributions. *Kroske*, 432 F.3d at 980. Here, the record lacks plaintiff-specific evidence that would allow

this Court to estimate amounts for any of the unliquidated damages Stanley seeks. And unlike the list in *Kroske* of emotional distress damages recovered in age-discrimination cases in Washington, Blue Cross and Blue Shield of Montana fails to explain why the three cases cited in its response brief—and only these three cases—are relevant and sufficient comparators in this case.

Even if this Court were to treat these cases as sufficient evidence to satisfy the preponderance of the evidence standard Blue Cross and Blue Shield of Montana must meet, Blue Cross and Blue Shield of Montana does not show why those three cases establish potential emotional distress damages in this case. First, *Weber v. Blue Cross of Montana* was a case involving damages for wrongful cancellation of a medical plan contract altogether, rather than damages stemming from failure to cover specific medical expenses under the contract. 643 P.2d 198, 199-200 (Mont. 1982). There, the underlying dispute was not about whether a discrete service was medically necessary such that it met the standard for out-of-state waiver exceptions—the dispute was that throughout all the plaintiffs' medical procedures, the plaintiffs believed they were covered by a plan and they were not. Blue Cross and Blue Shield of Montana does not explain how, for example, emotion distress damages based on the total loss of coverage for an extended period of time are a relevant indicator for emotional distress damages based on a single denied claim. In *Hull v. Ability Insurance Company*, the defendant intentionally terminated an insurance contract despite

knowing about the plaintiff's heightened medical needs. 2012 WL 6083614, at *2-4. Blue Cross and Blue Shield of Montana does not explain how the $2 million punitive damages award there is indicative of the amount in emotional distress damages here where there do not appear to be allegations about the same degree of "reprehensibl[e]" conduct. *Id.* Finally, the conduct between the plaintiff and the insurer in *Ace v. Aetna Life Insurance Company* was prolonged and involved, much more so than a straightforward denial of coverage alleged in the case before this Court. 139 F.3d 1241, 1243. Again, the distinct facts in those three cases could explain the higher emotional distress damages when compared to the facts alleged in the Complaint here. Blue Cross and Blue Shield of Montana need not provide an exact analogue for computing potential emotional distress damages; however, it fails to explain how these three cases are probative of the potential emotional distress damages in this case.

Because neither party has provided plaintiff-specific evidence in the record regarding Stanley's potential emotional distress damages, nor has Blue Cross and Blue Shield of Montana explained how *Weber*, *Hull*, or *Ace* shed light on the potential damages here, Blue Cross and Blue Shield of Montana has not established by a preponderance of the evidence that the unliquidated damages claimed in this case bring the amount in controversy above $75,000. *Ibarra*, 775 F.3d at 1197-99. And

to the extent there is any doubt as to the amount in controversy, this Court must remand. *See Gaus*, 980 F.2d at 566.

**2. Blue Cross and Blue Shield of Montana Fails to Show that Attorneys' Fees Lift the Amount in Controversy Above $75,000.**

Blue Cross and Blue Shield of Montana's assertion concerning attorneys' fees in this case is based on speculation, not evidence of the fees that Stanley might actually incur. Blue Cross and Blue Shield of Montana asserts that the attorneys' fees Stanley would recover if he were to prevail places the amount in controversy in excess of $75,000. (Doc. 25 at 12-15). In support of this assertion, Blue Cross and Blue Shield of Montana attached a Declaration of Daniel J. Auerbach, one of the defense attorneys in this case. (Doc. 25-1). Auerbach bases his claims in this Declaration on his 21 years of practicing law, "including substantial experience litigating insurance coverage, contract, declaratory judgment, and insurance bad faith." (*Id.* at 2). Auerbach states that he "do[es] not know the terms of Plaintiff's fee agreement with his counsel and do[es] not offer any opinion concerning the amount Plaintiff may ultimately be obligated to pay counsel." (*Id.* at 4).

Auerbach's Declaration does not show that Stanley will incur enough in attorneys' fees to close the gap between the amount Stanley specifies in his complaint and the $75,000 jurisdictional threshold. Instead, the Declaration works backwards, starting with the jurisdictional gap of $16,365.32 it must overcome. (*Id.* at 3). The Declaration establishes that $350 per hour is a reasonable and conservative rate for

this case (*Id.* at 2); that $350 per hour for about 47 hours equals approximately $16,500 (*Id.* at 3); and that this case will likely require more than 47 hours of attorney work (*Id.*). In other words, the Declaration restates the jurisdictional threshold in the form an opinion. Because the estimate runs backward from the jurisdictional threshold rather than forward from case-specific facts, it does not show by a preponderance of the evidence that this litigation will take more than 47 hours of attorney time. Auerbach concedes that "this case remains in its early stages and the precise amount of attorney time that ultimately will be required cannot presently be known," (*Id.*), and provides no basis for the number of attorney hours this case may reasonably require.

Auerbach's Declaration does not provide enough evidence for this Court to compute the amount in prospective attorneys' fees Stanley could recover. The Court computes the amount in prospective attorneys' fees by multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Fritsch*, 899 F.3d at 795. Auerbach provides no insight into the number of hours Blue Cross and Blue Shield of Montana's attorneys have expended on litigating this case, let alone what he believes Stanley will reasonably expend on litigation. He cites only his general experience as a litigator in declaring that this case will consume more than 47 hours of attorney work. Other district courts within the Ninth Circuit have found that the failure of offered evidence to tie an estimate of attorneys' fees to the

specific facts of the case renders that evidence insufficient for a party to carry its burden. *See Degenhardt v. Ford Motor Company*, No. 21-cv-1921-MMA-BLM, 2022 WL 103723, at *6-7 (S.D. Cal. Jan. 10, 2022); *see also Conrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196, 1200 (N.D. Cal. 1998) (finding that "[d]efendant's contention that attorney fees are likely to total at least $20,000 is too speculative" because defendant failed to "estimate the amount of time each major task will take" or vary the hourly billing rate for each task). The Auerbach Declaration's failure to tie its estimate of 47 hours to any facts about this specific case means that Blue Cross and Blue Shield of Montana have not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. The Court will not engage in guesswork.

Blue Cross and Blue Shield of Montana's reliance on *Drange v. Mountain West Farm Bureau Mut. Ins. Co.*, No. 20-30-BLG-SPW, 2021 WL 1597924 (D. Mont. Apr. 23, 2021), does not alter this conclusion. In *Drange*, this Court found that the removing defendant had established that attorneys' fees brought the amount in controversy over the jurisdictional minimum by a preponderance of the evidence. *Id.* at *2. But there, in addition to citing similar cases involving the calculation of attorneys' fees, the defendant submitted an affidavit stating that it had already incurred more than $50,000 in motions practice in the case. *Id.* Blue Cross and Blue Shield of Montana has provided no similar evidence in this case. Indeed, the one

case-specific fact offered to align this case with *Drange*'s complexity—that this litigation would require a medical necessity expert (Doc. 1 ¶19)—has since been abandoned. Blue Cross and Blue Shield of Montana states that it "did not deny Plaintiff's claims on the ground that the treatment was not medically necessary," (Doc. 11 at 22), and it expressly disclaims reliance on the cost of a medical necessity expert (Doc. 25 at 15 n.5). The Court does not find that Blue Cross and Blue Shield of Montana has established that the amount in attorneys' fees at issue in this case closes the jurisdictional gap.

*Johnson v. Mid-Century Ins. Co.* confirms that a defendant must do more than just assert an estimate of attorneys' fees. In *Johnson*, a defendant relied on *Drange* to support a $50,000 attorneys' fee estimate in an insurance coverage dispute. No. CV 22-53-BU-KLD, 2023 WL 2540249, at *4 (D. Mont. Mar. 16, 2023). But this Court rejected that argument in part because the defendant had not "submitted, by affidavit or otherwise, any actual evidence to prove its $50,000 attorney fee estimate is reasonable under the specific facts of this case." *Id.* The Ninth Circuit affirmed that reasoning: "as the magistrate judge correctly concluded, [the defendant] adduced no 'summary-judgment-type evidence' to demonstrate the accuracy of [the $50,000 attorney fee estimate]." 2024 WL 702332, at *1. Although the *Johnson* court ultimately denied remand because the plaintiff there pleaded a common-fund claim aggregating fees across similarly situated insureds—a feature absent from

Stanley's Complaint—it expressly distinguished *Johnson* from *Drange* because the *Johnson* defendant did not provide evidence of legal spending like the *Drange* defendant did. 2023 WL 2540249, at *4. Here, Blue Cross and Blue Shield of Montana's attempt to show that the attorneys' fees bring the amount in controversy over $75,000 is more similar to the defendant's attempt to do so in *Johnson* than in *Drange*—it has provided no evidence in support of its claim that Stanley will bill more than 47 hours of attorney time. Blue Cross and Blue Shield of Montana provides insufficient information to prove by a preponderance of the evidence that attorneys' fees in this case bring the amount in controversy above the $75,000 jurisdictional requirement.

**IV. Conclusion**

Because this Court lacks subject matter jurisdiction under 28 U.S.C. §1332, the Court **GRANTS** Stanley's motion to remand. (Doc. 17). This matter is **REMANDED** to the Montana Eighteenth Judicial District Court, Gallatin County for further proceedings.

The Court **DENIES** as moot Blue Cross and Blue Shield of Montana's motion to dismiss. (Doc. 10).

The court **VACATES** the telephonic preliminary pretrial conference set for September 24, 2026 at 9:30am.

The Clerk of Court is directed to close this matter.

IT IS SO ORDERED.

DATED this 23rd day of September, 2026.

Kathleen Lane

KATHLEEN S. LANE
United States District Judge